# EXHIBIT 1



**U.S. Department of Justice**

Environment and Natural Resources Division

90-1-24-06301

*Law and Policy Section*  *Telephone (202) 514-1442*
*P.O. Box 7415*  *Facsimile (202) 514-4231*
*Washington, DC 20044-7415*

November 27, 2023

PROVIDED TO COUNSEL OF RECORD
TO SUBMIT TO THE COURT VIA ECF

Clerk's Office
United States District Court
Northern District of New York
James T. Foley U.S. Courthouse
445 Broadway, Room 424
Albany, NY 12207-2926

  Re: *Sierra Club, Inc., et al. v. Ben Weitsman & Son, Inc., et al.* (N.D.N.Y.), Case No. l:21-cv-00546

Dear Clerk of Court:

  I am writing to notify you that the United States has reviewed the proposed consent judgment in this action and does not object to its entry by this Court.

  On October 23, 2023, the Citizen Suit Coordinator for the Department of Justice received a copy of the proposed consent judgment in the above-referenced case for review pursuant to the Clean Water Act, 33 U.S.C. § 1365(c)(3).[1] This provision provides, in relevant part:

> No consent judgment shall be entered in an action in which the United States is not a party prior to 45 days following the receipt of a copy of the proposed consent judgment by the Attorney General and the Administrator.

---

[1] The term "consent judgment" in the Clean Water Act citizen suit provisions has a broad meaning and encompasses all instruments entered with the consent of the parties that have the effect of resolving any portion of the case. For example, a document stipulating to dismissal of a case of any part thereof is within the scope of this language. Such documents and any associated instruments must be submitted to the United States and the court for review, notwithstanding any provisions purporting to maintain the confidentiality of such materials. The Department monitors citizen suit litigation to review compliance with this requirement.

*See also* 40 C.F.R. § 135.5 (service on Citizen Suit Coordinator in the U.S. Department of Justice). A settlement that does not undergo this federal review process is at risk of being void.

In its review, the United States seeks to ensure that the proposed consent judgment complies with the requirements of the relevant statute and is consistent with its purposes. *See Local 93, Int'l Ass'n of Firefighters v. City of Cleveland*, 478 U.S. 501, 525-26 (1986) (a consent decree should conform with and further the objectives of the law upon which the complaint was based). For example, if the defendant has been out of compliance with statutory or permit requirements, the proposed consent judgment should require the defendant to come into prompt compliance and should include a civil penalty, enforceable remedies, injunctive relief, and/or an environmentally beneficial project payment sufficient to deter future violations, or combinations of the above.

In this case, the proposed consent decree requires, *inter alia*, that Defendants submit a payment to a non-party organization to be used to carry out environmental projects relating to water quality improvements in the waters of New York. Where a consent judgment provides for the payment of sums to a third party that is to undertake an environmentally beneficial project and/or acquire a property interest that will have environmental benefits, the United States typically requests that the third party provide a letter to the Court and to the United States representing that it is a 501(c)(3) tax exempt entity and that it: (1) has read the proposed consent judgment; (2) will spend any monies it receives under the proposed judgment for the purposes specified in the judgment; (3) will not use any money received under the proposed consent judgment for political lobbying activities; and (4) will submit to the Court, the United States, and the parties a letter describing how the funds were spent. In a letter attached hereto, the intended recipient of the funds confirmed that any funds received as a result of the proposed consent decree would be used solely for the purpose outlined in the consent decree and no portion of the funds would be used for political lobbying activities. The United States believes that this letter will help to ensure that any monies expended under the consent judgment will be used in a manner that furthers the purposes of the Clean Water Act and that is consistent with the law and the public interest.

Given the facts of this case, the United States has no objection to the proposed consent judgment. The fact that we do not have a basis to object to this consent judgment does not imply approval of this instrument.

The United States affirms for the record that it is not bound by this settlement. *See, e.g., Hathorn v. Lovorn*, 457 U.S. 255, 268 n.23 (1982) (Attorney General is not bound by cases to which he was not a party); *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found. Inc.*, 484 U.S. 49, 60 (1987) (explaining that citizen suits are intended to "supplement rather than supplant governmental action"); *Sierra Club v. Electronic Controls Design*, 909 F.2d 1350, 1356 n.8 (9th Cir. 1990) (explaining that the United States is not bound by citizen suit settlements, and may "bring its own enforcement action at any time"); 131 Cong. Rec. S15,633 (June 13, 1985) (statement of Senator Chafee, on Clean Water Act section 505(c)(3), confirming that the United States is not bound by settlements when it is not a party). The United States also notes that, if the parties subsequently propose to modify any final consent judgment entered in this case, the

parties should so notify the United States, and provide a copy of the proposed modifications, forty-five days before the Court enters any such modifications. *See* 33 U.S.C. §1365(c)(3).

    We appreciate the attention of the Court. Please contact the undersigned at 202-514-0652 if you have any questions.

    Sincerely,

    */s/ Cynthia Taub*

    Cynthia Taub, Attorney
    U.S. Department of Justice
    Environment and Natural Resources Division
    Law and Policy Section
    P.O. Box 7415
    Washington, D.C. 20044-4390

cc:    Counsel on Record via ECF

# EXHIBIT A

# American Farmland Trust

**Attn: Bryn Bowen (Bryn.Bowen@usdoj.gov) and Cynthia Taub (Cynthia.Taub@usdoj.gov)**

U.S. Department of Justice, ENRD – Law & Policy Section

November 7, 2023

To whom it may concern:

This letter is in response to the request by the United States Department of Justice ("DOJ") concerning the usage of funds by American Farmland Trust (AFT) derived from the Environmental Benefit Payment resulting from *Sierra Club, Inc., et al. v. Ben Weitsman & Son, Inc., et al.*, Case No. 1:21-cv-00546-LEK-DJS (DLC). We will inform your office of the receipt of the funds, $455,000, in a further communication when they are available.

In response to specific questions and declarations:

(1) American Farmland Trust is a 501(c)(3): EIN 52-1190211.

(2) We have read the proposed consent judgement.

(3) Any funds received under the proposed consent judgement will be spent only for the purposes specific in the proposed consent judgement.

(4) AFT will not use any money received under the proposed consent judgment for political lobbying activities.

(5) Following the expenditure of funds provided by the settlement instrument it will submit to the Court, the United States, and the parties a letter describing how the funds were spent.

A project description follows.

Yours sincerely,

*Linda M. Garrett*

Linda M Garrett
NY/NJ Regional Director

**PROJECT DESCRIPTION – Water quality improvement by implementing regenerative agricultural practices.**

American Farmland Trust (AFT) is the only national organization that takes a holistic approach to agriculture, focusing on the land itself, the agricultural practices used on that land, and the farmers and ranchers who do the work. AFT launched the conservation agriculture movement and continues to raise public awareness through our **No Farms No Food** message. Since our founding in 1980, AFT has helped permanently protect over 6.5 million acres of agricultural lands, advanced environmentally-sound farming practices on millions of additional acres and supported thousands of farm families. AFT has a strong record of performance on complex, multi-year projects involving multiple partners that develop, replicate, and scale up farmer-driven approaches to advance conservation and soil health and a proven ability to implement multifaceted conservation projects at the state, regional, and national levels.

In 2018, AFT created the Genesee Valley Demonstration Farm Network to highlight conservation systems that build soil health, benefit water quality, and mitigate the impacts of severe weather events. The network serves as a platform to share technology, information and lessons learned with farmers, agribusiness, conservation agencies, landowners and the public, and to facilitate farmer-to-farmer discussions and learning opportunities related to conservation practices and their impacts. One of the strengths of the Network is AFT's role in coordinating outreach, education, and conservation efforts with NRCS, Cornell Cooperative Extension (CCE) and Soil and Water Conservation Districts (SWCDs) throughout the New York State. The Genesee River Demonstration Farm Network started with two farms with support from the Natural Resources Conservation Service and has recently grown to 20 farms, expanding into the Lake Erie watershed. Put simply, AFT has a strong track record and credibility with farmers and landowners, particularly those who have often been underserved by federal and state programs, as well as connections with partners and service providers to support farmers in achieving significant conservation goals in New York.

The funds will play a crucial role in enhancing on-farm conservation efforts, specifically focused on improving soil health and water quality, and will be used to support AFT's work in New York on projects reducing nutrient runoff into the waters of New York. More specifically, a significant portion of the resources will be allocated directly to farms to support their transition into adopting non-structural conservation practices such as no-till or reduced tillage, cover cropping, rotational grazing, and nutrient management to improve soil structure, prevent soil erosion and enhance nutrient optimization and retention. This may include the purchase of specialized equipment to be shared by farmers to implement these practices as well as payments to farmers to minimize risk and off-set their implementation costs. Occasionally funds may be used to assist with adoption of structural systems such as grassed waterways and riparian buffers, which serve as natural filters, trapping sediments and pollutants before they reach water bodies. Staff time will be used to provide technical and financial assistance to farms as they transition to adopting new conservation practices.