# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------------

SIERRA CLUB, INC. AND RIVERKEEPER, INC.,

                     Plaintiffs,

v.

BEN WEITSMAN & SON, INC., UPSTATE SHREDDING DISC, INC., UPSTATE SHREDDING, LLC, WEITSMAN SHREDDING, LLC, WEITSMAN RECYCLING, LLC, BEN WEITSMAN OF ALBANY, LLC, BEN WEITSMAN OF ITHACA, LLC, BEN WEITSMAN & SON OF ROCHESTER, LLC, BEN WEITSMAN & SON OF SYRACUSE, LLC, BEN WEITSMAN OF HORNELL, LLC BEN WEITSMAN & SON OF JAMESTOWN, LLC AND BEN WEITSMAN OF ALLEGANY, LLC,

                     Defendants.

-----------------------------------------------------------------------

Case No. 1:21-cv-00546-LEK-DJS

**CONSENT DECREE**

WHEREAS, Plaintiff Sierra Club, Inc. is a not-for-profit environmental organization whose mission is to explore, enjoy, and protect the planet; to practice and promote the responsible use of the earth's ecosystems and resources; to educate and enlist humanity to protect and restore the quality of the natural and human environment; and to use all lawful means to carry out those objectives. Sierra Club is a chapter-based organization headquartered in California with chapters in Albany, New York and subchapters in Binghamton, NY; Syracuse, NY; Rochester, NY; Buffalo, NY; and near Ithaca, NY.

WHEREAS, Plaintiff Riverkeeper, Inc. is a not-for-profit environmental organization headquartered in Ossining, New York, and whose mission is to protect and restore the Hudson River, from source to sea, and safeguard drinking water supplies through advocacy rooted in community partnerships, science, and law.

WHEREAS, Defendant Weitsman Shredding, LLC is a limited liability corporation incorporated under the laws of the State of New York that participates in the operation of Weitsman Shredding, a scrap metal recycling facility located at 1 Recycle Drive, Owego, NY ("Shredding Facility").

WHEREAS, Defendant Upstate Shredding, LLC is a limited liability corporation incorporated under the laws of the State of New York that owns the property located at 1 Recycle Drive, Owego, NY 13827, the location of the Shredding Facility.

WHEREAS, Defendant Weitsman Recycling, LLC is a limited liability corporation incorporated under the laws of the State of New York that operates Weitsman Recycling – Binghamton Division, a scrap metal recycling facility, located at 10 Brandywine Ave, Binghamton, NY 13901 ("Binghamton Facility"); and also operates the Weitsman Recycling – Owego Division, a scrap metal recycling facility located at 15 West Main Street, Owego, NY 13827 ("Owego Facility").

WHEREAS, Defendant Ben Weitsman of Albany, LLC is a limited liability corporation incorporated under the laws of the State of New York that operates Ben Weitsman of Albany, a scrap metal recycling facility located at 300 Smith Boulevard, Albany, NY 12202 ("Albany Facility").

WHEREAS, Defendant Ben Weitsman of Ithaca, LLC is a limited liability corporation incorporated under the laws of the State of New York that formerly operated Ben Weitsman of Ithaca, a scrap metal recycling facility that was located at 105 Cherry Street, Ithaca, NY ("Ithaca Facility").

WHEREAS, Defendant Ben Weitsman & Son of Rochester, LLC is a limited liability corporation incorporated under the laws of the State of New York that operates Ben Weitsman of Rochester, a scrap metal recycling facility located at 80 Steel Street, Rochester, NY 14601 ("Rochester Facility").

WHEREAS, Defendant Ben Weitsman & Son of Syracuse, LLC is a limited liability corporation incorporated under the laws of the State of New York that operates Ben Weitsman of Syracuse, a scrap metal recycling facility located at 333 Bridge Street, Syracuse, NY 13209 ("Syracuse Facility").

WHEREAS, Defendant Ben Weitsman of Hornell, LLC is a limited liability corporation incorporated under the laws of the State of New York that operates Ben Weitsman of Hornell, a scrap metal recycling facility located at 6334 County Rte. 64, Hornell, NY 14843 ("Hornell Facility").

WHEREAS, Defendant Ben Weitsman & Son of Jamestown, LLC is a limited liability corporation incorporated under the laws of the State of New York that operates Ben Weitsman of Jamestown, a scrap metal recycling facility located at 610 West 8th Street, Jamestown, NY 14701 ("Jamestown Facility").

WHEREAS, Defendant Ben Weitsman of Allegany, LLC is a limited liability corporation incorporated under the laws of the State of New York that operates Ben Weitsman of Allegany, a scrap metal recycling facility located at 34 West Union Street, Allegany, NY 14706 ("Allegany Facility").

The aforementioned facilities, with the exception of the Ithaca Facility, are herein individually referred to as "Facility" and collectively referred to as the "Facilities" or "Weitsman Facilities."

WHEREAS, the Weitsman Facilities are operated pursuant to the New York State Department of Environmental Conservation SPDES Multi-Sector General Permit for Stormwater Discharges Associated with Industrial Activity, Permit No. GP-0-23-001 ("General Permit").

WHEREAS, the Plaintiffs allege and the Defendants deny that the Weitsman Facilities discharge, and in the case of the Ithaca Facility, have discharged, polluted stormwater runoff from industrial operations that eventually discharge to the following waters of the United States, respectively:

- Albany Facility – Hudson River
- Ithaca Facility – Sixmile Creek / Cayuga Lake Inlet
- Binghamton Facility – Brandywine Creek / Susquehanna River
- Shredding Facility – Owego Creek / Huntington Creek / Susquehanna River
- Owego Facility – Owego Creek
- Rochester Facility – Erie Canal
- Syracuse Facility – Geddes Brook
- Hornell Facility – Canisteo River
- Allegany Facility – Allegany River
- Jamestown Facility – Chadakoin River

WHEREAS, the Weitsman Facilities primarily engage in the industrial activity of storage, processing, and recycling of scrap metal. The Shredding Facility additionally engages in metal shredding.

WHEREAS, the Ithaca Facility was formerly engaged in the storage, processing, and recycling of scrap metal. The Ithaca Facility ceased operations on or around September 30, 2021, and filed a Notice of Termination with the New York Department of Environmental Conservation ("DEC") to terminate its coverage under the General Permit on October 4, 2021, which was acknowledged by DEC.

WHEREAS, Plaintiffs sent a notice of intent to sue Defendants (the "Notice Letter") on January 27, 2021, and filed this action on May 11, 2021, alleging violations of 33 U.S.C. §§ 1311(a) and 1342 of the Clean Water Act ("CWA") and seeking declaratory and injunctive relief, civil penalties, and reasonable attorneys' fees and costs ("Complaint").

WHEREAS, Defendants immediately contacted Plaintiffs upon receipt of the Notice Letter to advise that although they did not agree with Plaintiffs' allegations, they wished to confer to address issues raised by Plaintiffs due to the ongoing commitment of Defendants to continually enhance environmental practices and compliance.

WHEREAS, Plaintiffs alleged in its Complaint and Notice Letter that Defendants have violated and continue to violate CWA Sections 33 U.S.C. §§ 1311(a) and 1342; these allegations are denied by Defendants.

WHEREAS, on October 19, 2023, Plaintiffs filed a notice pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(i) dismissing Ben Weitsman & Son, Inc., and Upstate Shredding Disc, Inc., with prejudice.

WHEREAS, without any concession or admission by Defendants that they have violated the Clean Water Act, or any concession or admission by Plaintiffs that Defendants' implementation of the measures listed herein, which were recommended or accepted by Plaintiffs as a component of this Decree, will prevent all discharges of polluted stormwater or will assure compliance with the terms and conditions of the General Permit, Plaintiffs and Defendants (collectively "the Parties" or individually "Party") agree that it is in their mutual interest to resolve this matter without the taking of evidence or findings of fact or law, and the Parties would like to avoid prolonged and costly litigation; and

NOW, THEREFORE, without the trial of any issue of fact or law, without the admission by Defendants of any of the facts or violations alleged in the Complaint, upon consent of the Parties, and upon consideration of the mutual promises contained herein,

**IT IS HEREBY STIPULATED BETWEEN THE PARTIES AND ORDERED, ADJUDGED AND DECREED BY THE COURT AS FOLLOWS:**

## I.    TERM OF CONSENT DECREE

1. The term "Effective Date," as used in this Consent Decree, shall mean the date upon which this Consent Decree is entered by the Court.

2. Unless an extension is agreed to in writing by the Parties, and subject to the discretion of the Court, this Consent Decree shall terminate on June 30, 2030, or through the conclusion of: i) any proceeding before this Court to enforce this Decree; ii) until the completion of any payment due hereunder; iii) until completion of the requirements unique to this Consent Decree not otherwise existing under the General Permit, if occurring later than June 30, 2030 (the "Termination Date"); or iv) the resolution of any matter being addressed through the Dispute Resolution provisions set forth in Part X, hereunder.

3. The term of this Consent Decree shall run from the Effective Date through the Termination Date (the "Term").

## II.    JURISDICTION AND VENUE

4. **Jurisdiction.** Jurisdiction over this action is conferred by 28 U.S.C. § 1331 (federal question), 33 U.S.C. § 1365(a) (Clean Water Act jurisdiction). Plaintiffs have standing and has complied with the statutory notice requirements under the CWA, 33 U.S.C. § 1365(a)(1), and the corresponding regulations at 40 C.F.R. § 135.2. An

actual, justiciable controversy exists between Plaintiffs and Defendants. The requested relief is proper under 28 U.S.C. §§ 2201, 2202, and 33 U.S.C. § 1365(a).

5. **Venue.** Venue is properly vested in this Court pursuant to 33 U.S.C. § 1365(c)(1), because the at least one of the Defendants resides in the Northern District of New York and all of the Defendants reside within New York State.

6. **Consent.** For purposes of this Decree, or any action to enforce this Decree by Plaintiffs or Defendants, the Parties consent to the Court's jurisdiction over this Decree.

## III.   CONTROL MEASURES AND BEST MANAGEMENT PRACTICES

7. **Compliance with General Permit.** Defendants shall operate the Facilities and manage stormwater discharges from the Facilities in compliance with the terms of the General Permit.

8. **Site Plans Showing Existing and Proposed Best Management Practices.** This Decree includes additions, changes and modifications to stormwater control measures and best management practices ("BMPs") at the Weitsman Facilities. These measures and BMPs are reflected in revised site maps (referred to as "Site Plans" in this Decree) for the Facilities. The plans describe both existing BMPs and proposed BMPs, which are specifically listed in Paragraph 9, in the appendices to this Decree, and/or referenced in the Site Plans. The Site Plans also include all of the outfalls that Defendants will be monitoring subsequent to the Effective Date and the planned construction of changes for each Facility, which were recommended or accepted by Plaintiffs as a component of this Consent Decree. The Site Plans are attached as exhibits to this Decree as follows:

   a.  Albany Facility – Exhibit 1
   b.  Binghamton Facility – Exhibit 2
   c.  Shredding Facility – Exhibit 3
   d.  Owego Facility – Exhibit 4
   e.  Rochester Facility – Exhibit 5
   f.  Syracuse Facility – Exhibit 6
   g.  Hornell Facility:
         i.  North Yard – Exhibit 7
        ii.  South Yard – Exhibit 8
   h.  Allegany Facility – Exhibit 9
   i.  Jamestown Facility – Exhibit 10

9. **Implemented Changes, Modifications, Enhancements, or Additions to Stormwater Management Practices.** Subsequent to Plaintiffs' Notice or Complaint and prior to the Effective Date, Defendants have implemented the following changes, modifications, enhancements, or additions to stormwater management practices at the Weitsman Facilities. These measures were recommended or accepted by Plaintiffs as a component of this Consent Decree.

5

a. <u>All Weitsman Facilities</u>

    i. To enhance the efficacy of sweeping, ordered magnetic sweeper attachments with a minimum pulling capacity of 300 pounds.

    ii. In addition to the ongoing previous services which predated the Notice, Plumley Engineering expanded the stormwater pollution prevention teams and trained at least one employee per Facility to conduct stormwater sampling in lieu of the third-party engineering consultant.

    iii. Specifically added or modified several slides to the Environmental Training Slides, including emphasizing housekeeping at Clear Span Buildings, training specifically to avoid stormwater being pushed or swept into on-site ponds, training for regular inspection and maintenance for sumps in covered EnviroRack sheds, requirements to store copper and lead indoors, and requirements to store containers upside down.

    iv. Added separate training slides that contain additional information regarding Sector P training for certain Facilities.

    v. Formally added Sector N-5 by submission of a NOI to the General Permit (requirements already covered by existing Sector M in General Permit).

    vi. Developed outside of previously existing Best Management Practices a separate enhanced Pond Maintenance Plan and separate Storm Preparation Plan.

    vii. Implemented digital rain gauges.

b. <u>Albany Facility</u>

    i. Consistently cover turnings, place under roof or remove by immediate shipment(s).

    ii. Eliminated usage and cleaned the area adjacent and west of the Facility (adjacent former salt storage pad). Implemented practices to prevent future usage of said area.

    iii. Placed signage to specifically prohibit dismantling activities in the entrance driveway area.

    iv. Installed Filtrexx EnviroSoxx and absorbent booms at eight drop inlets.

    v. Installed Filtrexx Stormexx catch basin filters in five catch basins.

    vi. Installed PIG Storm Drain Filters in seven catch basins.

    vii. Installed PIG Heavy Metal Catch Basin Filtration Insert Systems at two catch basins.

    viii. Implemented a monthly inspection and maintenance schedule for the filtration BMPs in and around catch basins.

    ix. Performed required maintenance on the drain behind the scale house.

    x. Performed hydro jetting to clean out all subsurface conveyances.

   c.   <u>Binghamton Facility</u>

       i.   Installed a grit chamber at the stormwater pond.
     ii.   Replaced a single-walled petroleum tank with a double-walled tank.

   d.   <u>Shredding Facility</u>

       i.   Added separately the railroad car loading area to the general monthly facility inspection list which includes daily sweeping of the paved area.
     ii.   Enhanced maintenance at the wire chopping plant, including coverage of baghouse and dust collection boxes, and installed rubber boots.
   iii.   Enhanced maintenance in the wire chopping plant covering Gaylord boxes with plastic when not actively loading.
   iv.   Removed most unused equipment.
    v.   Added to the general monthly inspection checklist to specifically reference shredder fluff and the drop curbs.
   vi.   Added to the Facility's Stormwater Pollution Prevention Plan ("SWPPP") a maintenance schedule for all bag houses.
  vii.   Added Outfall 004 by an NOI, as indicated on Exhibit 3, and to the Facility's monitoring program and SWPPP.

   e.   <u>Owego Facility</u>

       i.   Added Outfall 003 by an NOI, as indicated on Exhibit 4, and to the Facility's monitoring program and SWPPP.
     ii.   Ensure copper and lead materials are consistently stored indoors, and materials subject to windblown or tracking are covered.
   iii.   Ensure on-going practice of storing small empty containers either indoors or upside down.
   iv.   Implemented Filtrexx Siltsoxx along the edge of the swale leading to the pond.
    v.   Implemented REM Triton area drain filtration in the drain inlets in the swale leading to the pond.

   f.   <u>Rochester Facility</u>

       i.   Ensure that friable metal is covered in the maintenance garage if not being processed.  Added the following signage at the entrance and exit of the maintenance garage: "Storage of Scrap Materials in the Maintenance Garage is Prohibited."
     ii.   Expanded the pan underneath the drum rack so it contains the dispensing of all associated fluids.
   iii.   Reinforced that copper bins are covered when not being loaded/unloaded.
   iv.   Installed catch basin filters in the catch basins along Bickford Street.

    g.  <u>Syracuse Facility</u>

       i.  Reinforced turnings covered in place if not immediately shipped off site.

      ii.  Removed tanks and associated containment not being used.

    iii.  Reinforced training for visual examination of stormwater from the bermed fueling area if there is a discharge or disposal.

    iv.  Installed Filtrexx StormExx catch basin filters at the two catch basins adjacent to the entrance/exit.

    h.  <u>Hornell Facility</u>

       i.  North Yard
          1.  Moved existing spill kits closer to the fueling area.
          2.  Implemented double-walled tanks.
      ii.  South Yard
          1.  Installed a ClearSpan Structure over the EnviroRack.
          2.  Located double-walled tanks underneath the ClearSpan Structure.

    i.  <u>Jamestown Facility</u>

       i.  Implemented a daily pre-closure check of curbs along West Eighth and Monroe Streets.  Perform sweeping if needed.  Maintain a log of this practice.

      ii.  Removed unused equipment.

    iii.  Relocated the 1,000-gallon diesel double-walled tank.

    iv.  Added outfalls along Monroe Street to the Facility's NOI, and accordingly revised the Facility's monitoring program and SWPPP.

10. **Additional Control Measures and BMPs.**  Defendants will implement additional stormwater pollution control measures and BMPs set forth in appendices to this Consent Decree as follows:

    a.  Albany Facility – Appendix A
    b.  Binghamton Facility – Appendix B
    c.  Shredding Facility – Appendix C
    d.  Owego Facility – Appendix D
    e.  Rochester Facility – Appendix E
    f.  Syracuse Facility – Appendix F
    g.  Hornell Facility:
       i.  North Yard – Appendix G
      ii.  South Yard – Appendix H
    h.  Allegany Facility – Appendix I
    i.  Jamestown Facility – Appendix J

The appendices set forth the deadlines to implement said measures and BMPs, as accepted by Plaintiffs as a component of this Decree. The Parties note that the measures contained in Appendices A-J are largely reflected on the site plans contained in Exhibits 1-10, respectively.

With respect to the Binghamton Facility, Defendants will not be required to implement the items set forth in Appendix B.2, B.3, B.4, pursuant to a demonstration, including videos taken during a minimum 1.0" rain event, that stormwater runoff and run-on issues have been satisfactorily addressed by other implemented stormwater management practices.

11. **Confirmation of New Control Measures**.  Beginning on the last day of each quarter after the first full quarter following the Effective Date, Defendants shall submit a quarterly status report describing the implementation of any new control measure or BMP set forth in Exhibits 1-10 or Appendices A-J with digital photos for Plaintiffs to confirm the implementation of each control measure or BMP made in the previous quarter. The quarterly status reports shall be due until all required measures have been implemented at the specific Facility. For the purposes of this Consent Decree, the last day of each quarter means the following dates: March 31, June 30, September 30, and December 31.

12. **Stormwater Pollution Prevention Plan Amendments.**  Defendants have amended the Weitsman Facilities' SWPPPs to incorporate the implemented and proposed changes, modifications, and additions to BMPs at the Weitsman Facilities set forth in or resulting from this Consent Decree. Defendants also updated the SWPPPs' maps to include topographic contour lines to depict the direction of stormwater flow and drainage areas, and the locations of all known existing stormwater outfalls.

## IV.    MONITORING PROGRAMS

13. **Observations During Rain Events.**  Defendants agree to perform the following:

  a. Albany Facility

    i. Entrance.

      1. To verify that there are no offsite discharges during a 90th percentile storm event from the entrance to the Facility, during a continuous storm event during the first twelve (12) months of the Term having produced at least 1.2" of rain at the time of the observation, Defendants shall take video(s) of the entire area as marked on Exhibit 11.
      2. Within fourteen (14) days of the storm event, Defendants shall provide Plaintiffs with a copy of the video(s) as well as an hourly record from a rain gauge at the Facility to verify the amount of rain from the storm at the time of observation.

3. If there are any offsite discharges from the entrance, Defendants shall either implement a corrective action to eliminate said discharges or shall resubmit the Facility's NOI and revise the Facility's SWPPP to include said outfall and add said outfall to the Facility's monitoring program.1 Defendants shall inform Plaintiffs of their choice within thirty (30) days subsequent to submission of the aforementioned video(s).

    a. If Defendants elect to implement a corrective action, they shall concurrently provide details of the corrective action and implementation deadlines. Plaintiffs may offer comments and meet and confer with Defendants about the design of the corrective action. Subsequent to implementation, Defendants shall provide Plaintiffs with visual evidence to confirm said implementation. Plaintiffs may request that Defendants make subsequent visual observations to confirm that said corrective action eliminated the discharges, to which Defendants may or may not agree.

    b. If Defendants elect to submit a revised NOI, they shall provide Plaintiffs a copy of said NOI and SWPPP within fourteen (14) days of submission to DEC.

ii. Former Salt Storage Area.

1. To verify that there are no offsite discharges during a 90th percentile storm event from the former salt storage area adjacent to the Facility, during a continuous storm event during the first twelve (12) months of the Term having produced at least 1.2" of rain at the time of the observation, Defendants shall take video(s) of the entire area as marked on Exhibit 12.

2. Within fourteen (14) days of the storm event, Defendants shall provide Plaintiffs with a copy of the video(s) as well as an hourly record from a rain gauge at the Facility to verify the amount of rain from the storm at the time of observation.

3. If there are any offsite discharges to the former salt storage area, Defendants shall initiate implementation of a corrective action to eliminate said discharges. Within thirty (30) days after submission of the aforementioned video(s), Defendants shall provide details of the corrective action and an implementation deadline. Plaintiffs may offer comments and meet and confer with Defendants about the design of the corrective action. Subsequent to implementation, Defendants shall provide Plaintiffs with visual evidence to confirm said implementation. Subsequent to implementation, Defendants shall provide Plaintiffs with visual evidence to confirm said implementation. Plaintiffs may request that Defendants make subsequent visual observations to confirm

that said corrective action eliminated the discharges, to which Defendants may or may not agree.

b. <u>Syracuse Facility</u>

    i. Entrance.

        1. To verify that there are no offsite discharges during a 90th percentile storm event at the entrance to the Facility, during a continuous storm event during the first twelve (12) months of the Term having produced at least 1.0" of rain at the time of the observation, Defendants shall take video(s) of the entire area as marked on Exhibit 13.

        2. Within fourteen (14) days of the storm event, Defendants shall provide Plaintiffs with a copy of the video(s) as well as an hourly record from a rain gauge at the Facility to verify the amount of rain from the storm at the time of observation.

        3. If there are any offsite discharges from the entrance, Defendants shall either implement a corrective action to eliminate said discharges or shall resubmit the Facility's NOI and revise the Facility's SWPPP to include said outfall, and add said outfall to the Facility's monitoring program. Defendants shall inform Plaintiffs of their choice within thirty (30) days subsequent to submission of the aforementioned video(s).

            a. If Defendants elect to implement a corrective action, they shall concurrently provide details of the corrective action and implementation deadlines. Plaintiffs may offer comments and meet and confer with Defendants about the design of the corrective action. Subsequent to implementation, Defendants shall provide Plaintiffs with visual evidence to confirm said implementation. Plaintiffs may request that Defendants make subsequent visual observations to confirm that said corrective action eliminated the discharges, to which Defendants may or may not agree.

        4. If Defendants elect to submit a revised NOI, they shall provide Plaintiffs a copy of said NOI and SWPPP within fourteen (14) days of submission to DEC.

c. <u>Jamestown Facility</u>

    i. Post-construction Monitoring at Three Locations.

        1. To verify that there are no offsite discharges during a 90th percentile storm event from the Facility's north and south gates at Monroe Street and the entrance at West 8th Street, during a

continuous storm event during the first twelve (12) months
subsequent to the implementation of the measures set forth in
Appendix J having produced at least 1.0" of rain at the time of the
observation, Defendants shall take video(s) of the each of the
three areas as marked on Exhibit 14.

2. Within fourteen (14) days of the storm event, Defendants shall
provide Plaintiffs with a copy of the videos as well as an hourly
record from a rain gauge at the Facility to verify the amount of
rain from the storm at the time of observation.

3. If there are any offsite discharges from any of the three locations,
Defendants shall either implement a corrective action to eliminate
said discharges or, to the extent necessary, shall resubmit the
Facility's NOI and revise the Facility's SWPPP to include said
outfall(s), and add said outfall(s) to the Facility's monitoring
program. Defendants shall inform Plaintiffs of their choice within
thirty (30) days subsequent to submission of the aforementioned
video(s).

   a. If Defendants elect to implement a corrective action, they
   shall concurrently provide details of the corrective action
   and implementation deadlines. Plaintiffs may offer
   comments and meet and confer with Defendants about the
   design of the corrective action. Subsequent to
   implementation, Defendants shall provide Plaintiffs with
   visual evidence to confirm said implementation. Plaintiffs
   may request that Defendants make subsequent visual
   observations to confirm that said corrective action
   eliminated the discharges, to which Defendants may or
   may not agree.

4. If Defendants elect to submit a revised NOI, they shall provide
Plaintiffs a copy of said NOI and SWPPP within fourteen (14)
days of submission to DEC.

14. **Enhanced Sampling Frequency.**  During the Monitoring Phase, as set forth below
in Paragraph 20, Defendants will collect and analyze stormwater discharges at each
particular Weitsman Facility from one qualifying storm event per quarter consistent
with the requirements in Section IV(D) of the General Permit. Any such sampling of
discharges more frequently than required by the General Permit shall be appended to
the DMRs, consistent with 6 NYCRR 750-2.5(e)(4). Any sampling of stormwater
discharges at the Weitsman Facilities collected during the Term shall be subject to
Corrective Actions, as required under Part V of the General Permit.

15. **Provision of Documents to Plaintiffs.**  During each calendar year of the Term of
this Decree, Defendants shall provide Plaintiffs with copies of any documents or
correspondence submitted to any governmental agency (including upload to any
government agency-maintained website) related to stormwater discharges from the
Weitsman Facilities that are either in the Implementation Phase or Monitoring Phase

12

and those Facilities' compliance with the General Permit submitted to any governmental agency (including upload to any government agency website) no later than March 1 of the following year (commencing March 1, 2025). This includes, but is not limited to:

a. Documents and correspondence related to Defendants' SPDES/NPDES permits at the Facilities;
b. All Annual Reports required under the General Permit;
c. All Annual Certification Reports required under the General Permit;
d. Monitoring or sampling data, including both laboratory reports and discharge monitoring reports ("DMRs"), required under the General Permit;
e. Revisions to the SWPPP;
f. Data related to any discharges of industrial stormwater to the sanitary sewer system, if any;
g. Reports of spills or other incidents that may result in discharge of pollutants to a waterbody or sewer; and
h. Inspections by governmental agencies.

## V.    COMPLIANCE OVERSIGHT

16. **Corrective Action Plans and BMP Improvements.** During each calendar year of the Term, as well as the portion of 2024 that is encompassed in the Term ("Annual Reporting Period") that a Facility is in the Implementation Phase or Monitoring Phase, pursuant to Paragraph 20, if Defendants are required at any of the Weitsman Facilities to perform Corrective Actions pursuant to Part V of the General Permit, it shall provide Plaintiffs with a copy of all Corrective Action Documentation required by Part V.C of the General Permit for the particular Weitsman Facility by March 1 of the following year. If required to submit said Corrective Action Documentation, Defendants shall also concurrently provide Plaintiffs with a copy of the following documents from the previous calendar year for the respective Weitsman Facility:

a. Compliance Inspection & Evaluation report ("Compliance Report") required by Part IV.A.2 of the General Permit.
b. Documentation of Routine Inspections of BMPs required by Part IV.B of the General Permit.
c. Quarterly Visual Monitoring forms required by Part IV.E of the General Permit.

The aforementioned documents shall collectively be referred to as "Corrective Action Plans."

If Defendants propose BMPs to target sediment-bound pollutants, Defendants shall explain the reason for such a proposal and include a graphical and narrative demonstration of why sediment-bound pollutants are a concern at a particular Weitsman Facility.

The fact that a grit chamber has been implemented at a particular Weitsman Facility shall not alone preclude the need for additional structural BMPs including but not

13

limited to active treatment systems, subject to Dispute Resolution set forth below in
Section X.

17. **Meet and Confer Process.** Upon receipt of any Corrective Action Plans, Plaintiffs
may review and comment on any identified or omitted additional BMPs. If requested
by Plaintiffs within thirty (30) days of receipt of such Corrective Action Plans,
Plaintiffs and Defendants shall meet and confer to discuss the contents of the
Corrective Action Plans and the adequacy of proposed BMPs to improve the quality
of the Facility's stormwater relating to the benchmark levels or numerical effluent
limits. Plaintiffs may conduct a site inspection at the relevant Facility. If within thirty
(30) days of the parties meeting and conferring, or a longer period should the Parties
agree to an extension, the parties cannot agree on the adequacy of the additional
measures set forth in the Corrective Action Plans, the Settling Parties may engage in
Dispute Resolution pursuant to Section X below, unless the Parties agree to an
extension of the (30) day period.

18. **Measures Taken by Defendants**. Any concurrence with regard to the
reasonableness of any measures required by this Consent Decree, as recommended
or accepted by Plaintiffs as a component of this Consent Decree or otherwise
implemented by Defendants shall not be deemed to be an admission by Plaintiffs of
the adequacy of such measures should they fail to bring the Facility's stormwater
into compliance with applicable water quality criteria or the Clean Water Act's
BAT/BCT requirements as set forth in the General Permit, but may be considered in
Dispute Resolution pursuant to Section X of this Consent Decree.

19. **Annual Site Inspections.** Defendants agree to grant site access to Plaintiffs' legal
counsel, including its environmental consultants, to inspect each and any of the
Weitsman Facilities for compliance with the terms of this Consent Decree once
during each Annual Reporting Period (a "Site Inspection") if those Facilities are in
either the Implementation Phase or the Monitoring Phase. Any Site Inspection shall
occur during normal business hours with at least five (5) business days' notice, or
such less Notice as agreed upon by the Parties. During any Site Inspection,
Defendants shall allow access to the Facility's SWPPP, stormwater monitoring
records, and nonprivileged reports and data related to stormwater monitoring.
Plaintiffs may collect samples of stormwater discharges, photographs and/or video
recording. If Plaintiffs take photographs and/or video recordings, Plaintiffs shall
provide Defendant with copies of the photographs and/or videos prior to leaving the
Site Inspection. If Plaintiffs collect stormwater samples, they shall provide
Defendants with split samples while on site. Plaintiffs and Defendants shall provide
each other with analytical results of any stormwater monitoring within fourteen (14)
days of receipt of said results. No use of any photos or videos taken during the Site
Inspections can be shared publicly by Plaintiffs without the express written
permission of the Defendants, except pursuant to Dispute Resolution set forth in
Section X of this Consent Decree.

20. **Phased Schedule.** Given the varied timelines relating to the implementation of additional stormwater pollution control measures and BMPs as set forth in the appendices to this Consent Decree, the following phased schedule shall apply for the purposes of compliance oversight:

a. **Implementation Phase**. At the outset of the Term, while the Facilities are in the process of implementing the measures set forth in the appendices, each of the Weitsman Facilities shall be placed in the Implementation Phase.

b. **Monitoring Phase.** Once a Weitsman Facility has confirmed implementation all of the respective measures set forth in the appendices, subject to the following exceptions, that particular Weitsman Facility shall enter the Monitoring Phase. With respect to the Albany Facility, the Monitoring Phase shall commence upon the completion of Appendix A.2 and A.3. With respect to the Binghamton Facility, the Monitoring Phase shall commence upon the completion of Appendix B.1 and B.5. The particular Weitsman Facility shall remain in the Monitoring Phase for at least three (3) Annual Reporting Periods that follow its entry into said phase.

c. **Termination Phase.** Once a Weitsman Facility enters the Termination Phase, Defendants shall only be required to comply with the requirements of the General Permit, and shall no longer conduct enhanced sampling at said Facility pursuant to Paragraph 14 of this Consent Decree, nor shall Defendants be required to provide documents to Plaintiffs pursuant to Paragraph 15 of this Consent Decree.

    i. **Default Entry.** If a Weitsman Facility in the Monitoring Phase is not required to submit a Corrective Action Plan for the third Annual Reporting Period, that Facility shall automatically enter the Termination Phase. However, this default designation shall not apply if a Weitsman Facility collects samples from only one (1) stormwater sampling event during the third Annual Reporting Period under the Monitoring Phase.

    ii. **Potential Early Entry.** If a Weitsman Facility in the Monitoring Phase is not required to submit a Corrective Action Plan for the first or second Annual Reporting Period, Defendants may submit a request to Plaintiffs for said Facility to enter the Termination Phase. The Parties may meet and confer over the request but Plaintiffs reserve the right to ultimately reject such a request. Plaintiffs' rejection of said request shall not be subject to Dispute Resolution set forth in Section X of this Consent Decree.

    iii. **Entry Pursuant to Meet and Confer Process.** If a Weitsman Facility is required to submit a Corrective Action Plan for the third calendar year once the Facility has entered the Monitoring Phase, or only collects stormwater samples from one event during the third Annual Reporting

Period, the Parties shall meet and confer to determine whether the particular Weitsman Facility should remain in the Monitoring Phase or enter the Termination Phase. If the Weitsman Facility was required to submit a Corrective Action Plan, the Parties shall give consideration to the extent and severity of the exceedances of the applicable benchmarks and/or numerical effluent limits that triggered the Corrective Action Plan. If the Weitsman Facility only collects stormwater samples from one event during the third Annual Reporting Period, the Parties shall give consideration to, *inter alia*, the site and weather conditions that led to collection of only one set of samples and improved storm water retention capacity at the Facility. Consideration shall also be given to the specific Weitsman Facility's progress in meeting requirements under the General Permit during the Monitoring Phase. Any dispute about the future status of the Facility pursuant to this subparagraph shall be subject to Dispute Resolution set forth below in Section X of this Consent Decree.

## VI.    PAYMENTS

21. **Environmental Benefit Payment ("EBP")**.  By April 1, 2024, Defendants shall pay the sum of four hundred and fifty-five thousand dollars ($455,000) to the American Farmland Trust (the "EBP Recipient"), via either check or wire transfer, for use on projects relating to water quality improvements by reducing nutrient runoff in the waters of New York. None of this payment shall be disbursed to Plaintiffs. Following the expenditure of the funds, the American Farmland Trust shall provide a letter to the Parties describing how the funds were spent. Upon receipt, Plaintiff shall file a copy of that letter with the Court and submit a copy to the United States Department of Justice and the United States Environmental Protection Agency.

22. **Fees, Costs, and Expenses.**  Defendants shall pay a sum of four hundred and thirty-five thousand dollars ($435,000) as full and complete satisfaction of Plaintiffs' claims for attorneys' fees and costs incurred to date, including investigative and expert costs. The first one hundred thousand dollars ($100,000) of the payment shall be made by January 15, 2024. The remaining three hundred and thirty-five thousand dollars ($335,000) of the payment shall be made by March 1, 2024. These payments shall be made to Super Law Group, LLC, via either check or wire transfer.

23. **Fees and Costs for Compliance Oversight.**  As reimbursement for Plaintiffs' future fees and costs that will be incurred to monitor Defendants' compliance with this Consent Decree, including but not limited to, reviewing documentation submitted by Defendants, reviewing quarterly status reports, meeting and conferring regarding Compliance Action Plans, and evaluating stormwater monitoring results and recommending potential improvements prevent controls for the Weitsman Facilities, Defendants agrees to reimburse Plaintiffs for its reasonable fees and costs for Plaintiffs' legal counsel and/or its environmental consultant, consistent with fee recovery standards and practices of this Court.

For Plaintiffs' work associated with its compliance oversight of the Weitsman Facilities for each Annual Reporting Period during the Term, if any Corrective Action Plans are due within a particular Annual Reporting Period, Defendants shall reimburse Plaintiffs up to but not exceeding annually fifty thousand dollars ($50,000) for the particular Annual Reporting Period. If no Corrective Actions are due within a particular Annual Reporting Period, Defendants shall reimburse Plaintiffs up to but not exceeding annually twenty thousand dollars ($20,000) for that particular Annual Reporting Period.

Plaintiffs shall provide Defendants with an invoice containing an itemized description of tasks performed and associated daily time for any fees and costs incurred in overseeing the implementation of this Consent Decree for each Annual Reporting Period. Payments shall be made payable to "Super Law Group, LLC" and due within sixty (60) days of submission of said invoice subject to Dispute Resolution as set forth in Section X.

## VII.   EFFECT OF DECREE

24. **Mutual Release of Liability.**  In consideration of the above, and except as otherwise provided by this Consent Decree, the Parties hereby forever and fully release each other and their respective parents, affiliates, subsidiaries, divisions, insurers, successors, assigns, and current and former employees, attorneys, officers, directors and agents from any and all claims and demands of any kind, nature, or description whatsoever, and from any and all liabilities, damages, injuries, actions or causes of action, either at law or in equity, which arise or could have arisen from the Complaint or 60-Day Notice Letter, including, without limitation, all claims for injunctive relief, damages, penalties, fines, sanctions, mitigation, fees (including fees of attorneys, experts, and others), costs, expenses or any other sum incurred or claimed or which could have been claimed in the Complaint or 60-Day Notice Letter, for the alleged failure of Defendants to comply with the General Permit at any of the Weitsman Facilities, up to and including the Termination Date of this Consent Decree, as defined in Paragraph 2. This Paragraph does not constitute a waiver or release of any claims or defenses relating to the enforcement of this Decree or any subsequent related legal fees and costs as may be awarded by the Court.

25. **Reservation.**  Plaintiffs do not waive their rights to bring a future action for injunctive or declaratory relief, penalties, and attorneys' fees and costs based on stormwater discharges that occur after the Term of this Decree, subject to any and all defenses and rights of the Defendants.

26. **Compliance with Law.**  Plaintiffs do not, by consenting to the Decree, warrant or aver in any manner that Defendants' compliance with this Decree shall constitute or result in compliance with federal or state law or regulation. Nothing in this Decree shall be construed to affect or limit in any way the obligations of Defendants to comply with all federal, state, and local laws and regulations governing stormwater compliance consistent with the General Permit.

27. **Force Majeure.** No Party shall be considered to be in default in the performance of any of its respective obligations under this Consent Decree when performance becomes impracticable due to circumstances beyond Defendants' control. Force Majeure includes any war, fire, earthquake, windstorm, flood or natural catastrophe; civil disturbance, vandalism, pandemic, sabotage or terrorism; restraint by court order or public authority or agency; or action or non-action by, or inability to obtain the necessary authorizations or approvals from any governmental agency. A Force Majeure shall not include normal inclement weather, economic hardship, inability to pay, or employee negligence. Any party seeking to rely upon this paragraph to excuse or postpone performance shall have the burden of establishing that it could not reasonably have been expected to avoid the Force Majeure event and which by exercise of due diligence has been unable to overcome the failure of performance. The Settling Parties shall exercise due diligence to resolve and remove any Force Majeure event. Delay in compliance with a specific obligation under this Consent Decree due to Force Majeure as defined in this paragraph shall not excuse or delay compliance with any or all other obligations required under this Consent Decree.

## VIII.   FEDERAL REVIEW OF DECREE

28. **Review by United States.** The Parties recognize that, pursuant to 33 U.S.C. § 1365(c)(3), this Decree cannot be entered until forty-five (45) days after the receipt of a copy of the proposed Decree by the Attorney General of the United States and the Administrator of the EPA. Therefore, upon signing of this decree by the Parties, Plaintiffs shall serve copies of this Decree upon the EPA Administrator, the Regional EPA Administrator, and the Attorney General for review, as required by 40 C.F.R. § 135.5. If for any reason the United States should decline to approve this Decree in the form presented, the Parties agree to continue negotiations in good faith to cure any objection to entry of this Decree raised by the United States.

29. **Entry of Order.** Upon the expiration of the forty-five-day review period provided by 33 U.S.C. § 1365(c)(3), the Parties shall move the Court for entry of this Decree. This Decree shall take effect on the date it is entered by this Court. If for any reason the Court should decline to approve this Decree in the form presented, the Parties agree to continue negotiations in good faith in an attempt to cure any objection raised by the Court to entry of this Decree.

## IX.    MODIFICATION AND ENFORCEMENT OF DECREE

30. **Modification in Writing.** This Decree may be modified only upon written consent of the Parties and, if either Party deems necessary, the approval of the Court.

31. **Continuing Jurisdiction of the Court.** The United States District Court for the Northern District of New York ("NDNY") shall retain and shall have jurisdiction over the Parties to this Decree for the resolution of any disputes that may arise under this Decree. This Court shall also allow this action to be reopened for the purpose of enabling the Parties to this Decree to apply to the Court for any further order that

may be necessary to construe, carry out, enforce compliance and/or resolve any dispute regarding the terms or conditions of this Decree.

## X.    DISPUTE RESOLUTION

32. **Meet and Confer.**  Any disputes with respect to this Consent Decree shall be resolved by the Parties who shall first meet and confer (telephonically or via video) in good faith within thirty (30) days of either Party sending a written notification of a Dispute. During the meet and confer proceeding, the Parties will discuss the dispute and make reasonable efforts to devise a mutually acceptable plan, including implementation dates, to resolve the dispute. The Parties may, upon mutual written agreement, extend the time to conduct the meet and confer discussions beyond thirty (30) days.

33. **Court Conference/Motion.**  The Parties shall make good faith efforts to resolve or reduce all differences relating to the dispute, in accordance with NDNY Local Rule 7.1(a)(2). If after conferring the parties cannot resolve the dispute, the party seeking relief may request a court conference with the Magistrate Judge assigned to this action. If the Parties cannot resolve the dispute via a court conference with the Magistrate Judge, either party may submit the dispute via motion to the District Court in accordance with Local Rule 7.1(a)(2).

## XI.    MISCELLANEOUS PROVISIONS

34. **Entire Agreement.** This Decree constitutes the entire agreement among the Parties concerning the subject matter hereof and supersedes all previous correspondence, communications, agreements, and understandings, whether oral or written, among the Parties.

35. **Notices.** Any notice, demand, copies of documents, or other communications required to be made under this Decree (collectively, "Notices") by any Party hereto shall be effective only if in writing.  Notices given in the foregoing manner shall be deemed given: (a) if delivered by courier, when actually received or refused by the addressee; (b) if mailed, on the day of actual delivery as shown by the addressee's registered or certified mail receipt; or (c) if e-mailed, when acknowledged by the addressee. Each Party shall promptly notify the other Party of any change in this contact information or a change in representation.

Notices for Plaintiffs shall be sent to:

Douglas Chermak, Esq.
doug@superlawgroup.com
Super Law Group, LLC
222 Broadway, 22nd Floor
New York, NY 10038

Notice for all Defendants shall be sent to:

Doreen A. Simmons, Esq.
dsimmons@hancocklaw.com
Hancock Estabrook, LLP
1800 AXA Tower I
100 Madison Street
Syracuse, NY 13202

36. **Authorization.** Each person signing this Decree represents and warrants that they have been duly authorized to enter into this Decree by the Party on whose behalf it is indicated that the person is signing.

37. **Successors and Assigns.** This Decree shall be binding upon and inure to the benefit of the Parties and their respective representatives, heirs, executors, administrators, successors, officers, directors, agents, attorneys, employees and permitted assigns.

38. **Transfer of Ownership.** Defendants shall notify Plaintiffs prior to any transfer of ownership or control of the Facility to a non-Party and shall notify in writing the new owner or operator of this Decree and of its requirements.

39. **Interpretation.** The provisions contained herein shall not be construed in favor of or against any Party because that party or its counsel drafted this Decree, but shall be construed as if all Parties prepared this Decree, and any rules of construction to the contrary are hereby specifically waived. The terms of this Decree were negotiated at arm's length by the Parties hereto. The language in all parts of this Decree shall be construed according to its plain and ordinary meaning, except as to those terms defined by law, in the General Permit, Clean Water Act or specifically herein.

40. **Headings.** The section and paragraph headings contained in this Decree are for reference purposes only and shall not affect in any way the meaning or interpretation of this Decree.

41. **Counterparts.** This Decree may be executed in two or more counterparts, each of which will be deemed an original but all of which together will constitute one and the same instrument. Copies of the original Decree, whether transmitted by facsimile or other means, shall be effective.

42. **Severability.** In the event that any of the provisions of this Decree are held by a court to be unenforceable, the validity of the enforceable provisions shall not be adversely affected.

43. **Joint and Several Liability.** Defendants are jointly and severally liable for all payments required under this Decree.

44. **Changes to the General Permit.** Defendants will comply fully with the General Permit and any permit modification, individual permit, or General Permit reissuance applicable to the Facility during the Term of this Decree, including revised benchmark monitoring cutoff concentrations or effluent limitations (numeric or non-numeric).

45. The Parties acknowledge and agree that specific performance and injunction are the only appropriate remedies for any breach of this Agreement, and under no circumstances shall monetary damages be allowed for any breach of this Agreement.

46. **Confidentiality.** Notwithstanding anything to the contrary herein, all reports, statements and other materials forwarded to Plaintiffs not otherwise provided to regulatory authorities or created pursuant to General Permit requirements shall be deemed privileged and confidential, except to the extent they are included as part of a dispute resolution procedure as set forth above in Section X of the Consent Decree, subject to non-disclosure, including an Order of Protection as determined by the Court unless they are relevant and included as part of a dispute resolution procedure as set forth above in Section X of this Consent Decree.

47. **Publicity.** Any public statement made by Defendants in any press release, in any oral or written material promoting Defendant's environmental or charitable practices or record, or in Defendant's Annual Reports, that refers to Defendant's payments of the Environmental Benefit Payment under this Decree shall state that the payment "was made pursuant to the settlement of a Clean Water Act citizen suit."

Upstate Shredding, LLC
Weitsman Shredding, LLC
Weitsman Recycling, LLC
Ben Weitsman of Albany, LLC
Ben Weitsman of Ithaca, LLC
Ben Weitsman & Son of Syracuse, LLC
Ben Weitsman & Son of Rochester, LLC
Ben Weitsman of Hornell, LLC
Ben Weitsman & Son of Jamestown, LLC
Ben Weitsman of Allegany, LLC

Dated: 10/20/23

By: Adam J. Weitsman
Title: Member

21

Riverkeeper, Inc.

Dated: October 19, 2023
_____

_____

By: Victoria Leung
Title: Staff Attorney


Sierra Club, Inc.

Dated: _____

_____

By: Roger Downs
Title: Conservation Director, Atlantic Chapter

Riverkeeper, Inc.

Dated: _____          _____

By: Victoria Leung
Title: Staff Attorney


Sierra Club, Inc.

Dated: ___October 19, 2023_____          _____

By: Roger Downs
Title: Conservation Director, Atlantic Chapter



ENTERED and DATED this 21st day of _December_, 2023

_____

Honorable Lawrence E. Kahn
United States District Judge

22

## APPENDIX A: Additional Control Measures and BMPs – Albany Facility as Depicted on Exhibit 1

| Requirement | Deadline |
| --- | --- |
| 1.  Construct an access ramp to the outfall. | 7/31/26 |
| 2.  Construct a speed hump. | 12/31/23 |
| 3.  Construct a vegetated berm. | 12/31/23 |
| 4.  Install a wash pad with a separator connected to the sanitary sewer. | 7/31/26 |

## APPENDIX B: Additional Control Measures and BMPs – Binghamton Facility as Depicted on Exhibit 2

| Requirement | Deadline |
| --- | --- |
| 1.  Remove accumulated sediment pursuant to the Pond Maintenance Plan. | 7/31/25 |
| 2.  Construct asphalt tip-up curbs. | 7/31/26 |
| 3.  Construct concrete gutters. | 7/31/26 |
| 4.  Construct vegetated berm. | 7/31/26 |
| 5.  Adjust control structure at pond. | 7/31/25 |
| 6.  Install wash pad and holding tank to be emptied for disposal off-site as needed | 7/31/26 |

## APPENDIX C: Additional Control Measures and BMPs – Shredding Facility as Depicted on Exhibit 3

| Requirement | Deadline |
|---|---|
| 1.  Install two concrete grit chambers. | 12/31/23 |
| 2.  Construct concrete curbs. | 12/31/23 |
| 3.  Construct gutters. | 12/31/23 |
| 4.  Install catch basins. | 12/31/23 |
| 5.  Construct trench drains. | 12/31/23 |
| 6.  Install drainage pipes. | 12/31/23 |
| 7.  Install outlet protection devices. | 12/31/23 |
| 8.  Install a wash pad with a separator connected to the sanitary sewer. | 12/31/23 |
| 9.  Clear debris and stone from curb drops and construct lined swale with check dams. Regrade as may be needed to direct water to the storm pond. | 12/31/23 |
| 10. Install a Filtrexx boom along the south property line. | 12/31/23 |
| 11. Construct paved drainage swales at southwest pond inlet. | 12/31/23 |
| 12. Rehabilitate and maintain the southwest pond pursuant to the Pond Maintenance Plan. | 7/31/24 |
| 13. Install New Pig Drain Sediment Filter FLT832 or equivalent measure at the concrete control structure at the northwest pond. | 12/31/23 |

| Requirement | Deadline |
|---|---|
| 14. For the new trench drain and catch basin filters, implement and document a routine and heavy rainfall inspection and maintenance schedule to verify that the filters are properly situated and replaced as needed. | 12/31/23 |
| 15. Construct new pond, sized to accommodate a 10-year, 24-hour storm event, and associated OU-4 outfall near the Facility entrance. | 12/31/23 |
| 16. For the conveyances leading to the new pond, implement Filtrexx Stormexx or equivalent catch basin filters at the catch basins. | 12/31/23 |
| 17. For the trench drain leading to the new pond, implement Triton TDAM Filter with ZEO Media (Zeolite) or equivalent trench drain filters. | 12/31/23 |
| 18. Operations to be limited to within property line in truck parking area by adding physical barriers and a speed hump. Drainage from this area in this area is to proposed pond. | 12/31/23 |

## APPENDIX D: Additional Control Measures and BMPs – Owego Facility as Depicted on Exhibit 4

| Requirement | Deadline |
|---|---|
| 1. Install a wash pad with a separator connected to the sanitary sewer. | 7/31/24 |
| 2. Turnings, sealed units and other materials as appropriate are stored under cover and no longer exposed to precipitation. Construct modified frac tank covered containers. | 12/31/23 |
| 3. Construct vegetated berms in the perimeter areas. | 7/31/24 |
| 4. During construction, until vegetation is established, add silt fences around the north and west sides of the pad. | 7/21/24 |

# APPENDIX E: Additional Control Measures and BMPs – Rochester Facility as Depicted on Exhibit 5

| Requirement | Deadline |
|---|---|
| 1.   Install new drainage pipe and catch basins alongside Steel Street. | 7/31/25 |
| 2.   Install catch basins with Filtrexx Stormexx (Industrial Blend) or equal insert when storm basins installed. | 12/31/25 |
| 3.   Install a grit chamber. | 12/31/25 |
| 4.   Install concrete at several locations. | 12/31/25 |
| 5.   Install a drainage manhole. | 12/31/25 |
| 6.   Construct a concrete curb. | 12/31/25 |
| 7.   Topsoil, seed, and mulch disturbed areas. | 12/31/25 |
| 8.   Install a retaining wall. | 12/31/25 |
| 9.   Install trench drain across Bickford Street gate. | 12/31/25 |

# APPENDIX F: Additional Control Measures and BMPs – Syracuse Facility as Depicted on Exhibit 6

| Requirement | Deadline |
|---|---|
| 1. Construct drainage swales. | 7/31/26 |
| 2. Install a wash pad with a holding tank with contents to be disposed of off-site. | 7/31/26 |
| 3. Extending the outlet pipes and adding Pig pipe socks at each of the outlets. Implement and document monthly inspections to verify that filter socks are properly situated and replaced as needed. | 7/31/26 |
| 4. Install Filtrexx Envirosoxx booms or equivalent with check dams. | 7/31/26 |
| 5. Rehabilitate and maintain the ponds pursuant the Pond Maintenance Plan. Dispose of contaminated soils offsite and prohibit off-site discharges associated with dewatering. | 7/31/24 |
| 6. Regrade spoils areas including access driveway and finish with topsoil, seed, and mulch. Contractor shall place generated spoils as needed for infiltration and stabilization. | 7/31/26 |
| 7. Post-construction, perform hydro jetting of all subsurface conveyances at the Facility. Ensure that no water is discharged from the Facility during this process. | 60 days subsequent to construction of other measures in Appendix F. |

## APPENDIX G: Additional Control Measures and BMPs – Hornell Facility, North Yard, as Depicted on Exhibit 7

| Requirement | Deadline |
|---|---|
| 1.  Construct or reconstruct drainage swales. | 7/31/24 |
| 2.  Construct concrete curbs. | 7/31/24 |
| 3.  Install drainage pipes. | 7/31/24 |
| 4.  Install inlet grit chamber. | 7/31/24 |
| 5.  Install lined retention basin. | 7/31/24 |
| 6.  Install outlet protection devices. | 7/31/24 |
| 7.  Install outlet control structure. | 7/31/24 |
| 8.  Install a wash pad with a holding tank. Water from the holding tank will be disposed of off-site as needed. | 7/31/24 |
| 9.  Improve the stormwater pond. | 7/31/24 |

## APPENDIX H: Additional Control Measures and BMPs – Hornell Facility, South Yard, as Depicted on Exhibit 8

| Requirement | Deadline |
|---|---|
| 1.  Construct concrete gutters. and drainage piping. | 7/31/24 |
| 2.  Construct catch basins. | 7/31/24 |
| 3.  Construct trench drain and implement REM Triton TDAM filters with ZEO media or equivalent trench drain filters. | 7/31/24 |
| 4.  Regrade and pave ground surface. | 7/31/24 |
| 5.  Install outlet protection device. | 7/31/24 |
| 6.  Install drainage pipe. | 7/31/24 |
| 7.  Place excavated soils on berm and re-establish vegetation. | 7/31/24 |

## APPENDIX I: Additional Control Measures and BMPs – Allegany Facility as Depicted on Exhibit 9

| Requirement | Deadline |
|---|---|
| 1.  Install a new ClearSpan Structure for the EnviroRack. | 12/31/24 |
| 2.  Construct earthen berms. | 12/31/24 |
| 3.  Construct drainage swales. | 12/31/24 |
| 4.  Install catch basins. | 12/31/24 |
| 5.  Install manholes. | 12/31/24 |

| | |
|---|---|
| 6.  Construct gutters. | 12/31/24 |
| 7.  Install drainage piping. | 12/31/24 |
| 8.  Install pipe outlet protection. | 12/31/24 |
| 9.  Construct a concrete grit chamber. | 12/31/24 |
| 10. Deepen and line the pond. Rehabilitate and maintain the pond pursuant to the Pond Maintenance Plan. | 12/31/24 |
| 11. Install new gravel and pavement surfaces. | 12/31/24 |
| 12. In the catch basins, install Filtrexx Stormexx (Industrial Blend) or equivalent catch basin filter inserts. | 12/31/24 |
| 13. Construct wash pad with a holding tank. Water from the holding tank will be disposed of off-site, as needed. | 12/31/24 |
| 14. Vegetated berms will be finished using seed mixtures recommended in the NYS Standards and Specifications for Erosion and Sediment Control. | 12/31/24 |

## **APPENDIX J: Additional Control Measures and BMPs – Jamestown Facility as depicted on Exhibit 10**

| Requirement | Deadline |
| --- | --- |
| 1.  Construct a concrete grit chamber. | 12/31/25 |
| 2.  Construct a vegetated drainage swale. | 7/31/25 |
| 3.  Construct a lined drainage swale. | 12/31/25 |
| 4.  Install concrete curbs to direct runoff to the grit chamber. | 7/31/25 |
| 5.  Install speed humps. | 7/31/25 |
| 6.  Install vegetated berms. | 7/31/25 |
| 7.  Following installation of lined drainage swale, restore pond liner, as needed. | 7/31/25 |
| 8.  Implement water-tight covered containers for storage of turnings and other materials as appropriate. | 12/31/23 |
| 9.  Install a wash pad with a separator tank. Implement a portable pump and hose to discharge wash water to the sanitary manhole along West Eighth Street. | 7/31/25 |
| 10. Rehabilitate and maintain the pond pursuant to the Pond Maintenance Plan. Dispose of contaminated sediments/soils offsite and prohibit off-site discharges associated with dewatering. | 7/31/25 |
| 11. Post-construction of the above measures, implement Storm-catcher booms around source areas and additional necessary areas. | 7/31/25 |

# Exhibits 1-14

# Consent Decree

# Case No. 1:21-cv-00546-LEK-DJS







STORMWATER PROJECT
WIETSMAN SHREDDING, LLC.
TOWN OF OWEGO, TIOGA COUNTY, NEW YORK

SITE PLAN~
EXHIBIT 3

C201











STORMWATER PROJECT
BEN WEITSMAN OF HORNELL

BEN WEITSMAN OF HORNELL, LLC
T. OF HORNELL, STEUBEN COUNTY, NEW YORK

SITE PLAN-
EXHIBIT 8

C202







**Exhibit 11**

Verify runoff from driveway flows to catch basins

R.O.W.

R.O.W.

R.O.W.

Verify runoff from driveway flows to catch basins

TRANSFORMER ON CONCRETE PAD

POWER BOX

SMITH BOULEVARD

R.E.=15.42
I.E.=12.21



**Exhibit 12**

ASPHALT TIP-UP CURB

Asphalt Swale

FORMER CARGILL SALT STORAGE PAD (NOT LEASED BY WEITSMAN)

Verify asphalt berm is effective in containing runoff from the former salt pad and no flow from the scrap yard enters the pad.

Verify no runoff from the scrap yard site enters the catch basin, culvert or swale

Verify all runoff from the former salt pad is collected by the swale, culvert and catch basin.

Culvert Inlet

EXISTING ASPHALT BERM



**Exhibit 13**

Verify runoff from entrance flows to catch basins



Exhibit 14

Verify runoff from driveway flows to swale

Verify run off from pavement is contained and flows along the earthen and asphalt berms to the separator inlet.

Monroe Street